UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

03 cv 12304 MLW

EJD INSURANCE AGENCY, INC., )
　　Plaintiff )
　　　　MAGISTRATE JUDGE_____ )
v. ) COMPLAINT
 )                    51887
TRANSAMERICA OCCIDENTAL LIFE ) AMOUNT $ 150
INSURANCE COMPANY and BISYS ) SUMMONS ISSUED YES
INSURANCE SERVICES, INC., ) LOCAL RULE 4.1
　　Defendants ) WAIVER FORM
 ) MCF ISSUED
 ) BY DPTY. CLK.
 　　　　　　　　　　　　　　　　11/20/03

**The Parties**

1. The Plaintiff EJD Insurance Agency, Inc. (hereinafter "EJD") is a corporation organized under the laws of the Commonwealth of Massachusetts, maintaining a principal place of business at 10 Forbes Road, Braintree, County of Norfolk, Massachusetts. At all times pertinent hereto, EJD was an insurance agency, duly licensed as such by the Commonwealth of Massachusetts, and a commercial concern engaged in the business, *inter alia*, of contracting life insurance and annuities.

2. The Defendant Transamerica Occidental Life Insurance Company (hereinafter "Transamerica") is, upon information and belief, a corporation organized under the laws of the State of Iowa, maintaining a principal place of business at 4333 Edgewood Road NE, Cedar Rapids, Iowa. At all times pertinent hereto, Transamerica was a commercial concern engaged in the business, *inter alia*, of issuing life insurance and annuities. At all times pertinent hereto, Transamerica was the principal of the Defendant BISYS Insurance Services, Inc., and the Plaintiff.

3. The Defendant BISYS Insurance Services, Inc. (hereinafter "BISYS") is, upon information and belief, a corporation organized under the laws of the State of Delaware, registered as a foreign corporation under the laws of the Commonwealth of Massachusetts, maintaining a principal place of business at 4250 Crums Mill Road, Harrisburg, Pennsylvania. At all times pertinent hereto, BISYS was a commercial concern engaged in the business, *inter alia*, of contracting life insurance and annuities. At all times pertinent hereto, BISYS was the general agent of Transamerica.

**Jurisdiction**

4. Jurisdiction is proper under 28 U.S.C. § 1332 by virtue of diversity of citizenship of the parties and the $75,000.00 threshold of damages claimed.

## General Allegations

5. The Plaintiff repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-4.

6. In January 2002, Paul Reidy (hereinafter "Reidy") and Brian McNeil (hereinafter "McNeil"), agents of EJD, had an initial meeting with Stanley A. Stedman (hereinafter "Stedman"), an existing high net worth client of Kevin P. Martin & Associates, Inc., an accounting firm with which EJD exchanged extensive business. At the meeting, Reidy, McNeil and Stedman discussed certain life insurance options and estate planning for Stedman and his wife Ruth A. Stedman.

7. After a series of discussions over the ensuing ten (10) months, Reidy and McNeil identified a life insurance product appropriate for and attractive to Stedman.

8. Through Transamerica's general agent, BISYS, Reidy and McNeil on behalf of the Plaintiff contracted with Transamerica in the Commonwealth of Massachusetts to solicit the "TransACE survivor XL" policy, a so-called "second to die" guaranteed life insurance policy issued by Transamerica. The annual premium was approximately $46,000.00, with a death benefit of $5,000,000.00. The policy was to be issued by Transamerica through BISYS.

9. In November 2002, EJD, Reidy and McNeil initiated the application process which, given Stedman's age and the size of the policy, involved the gathering of considerable medical documentation and information.

10. In January 2003, Stedman completed the medical component of the application and, through EJD, Reidy and McNeil, submitted the same to Transamerica for underwriting.

11. Transamerica, through BISYS, advised EJD, Reidy and McNeil that the policy would likely issue with Stedman and his wife categorized as preferred, non-smoking insureds, a prospect EJD, Reidy and McNeil in turn related to Stedman.

12. In early February 2003, BISYS informed EJD, Reidy and McNeil that Stedman was considering changing his agent of record to a competing agent based in Florida. McNeil promptly called Stedman and explained to him that such a change would be unfair given all the work that EJD, Reidy and McNeil had performed on his behalf. Stedman agreed, and on February 6, 2003, signed an attestation affirming McNeil as his permanent agent of record relative to the Transamerica policy.

13. In this context, Stedman informed EJD, Reidy and McNeil that the competing agent said he could secure essentially the same policy for Stedman, but with Stedman and his wife categorized as preferred "select," non-smoking insureds, which involved a markedly lower premium. Stedman further related that the policy was a variation, or a "new product," with largely the same terms and conditions as that of the policy contemplated by EJD. Stedman

2

reported the competing agent had instructed him to refrain from disclosing this information to EJD because the agent was a "premiere producer" who wrote "millions" in premiums with Transamerica, and in turn secured preferential underwriting from Transamerica and BISYS for his customers.

14. Alarmed, EJD Reidy and McNeil immediately contacted their case manager, Danielle Champagne (hereinafter "Champagne") at BISYS, and made inquiry on February 20, 2003. Champagne, in an email communication dated February 24, 2003, stated that she had "just received a response from the [Transamerica] underwriter. Based on the lab findings, the applicants DO NOT qualify for the Select status with the new product."

15. In reliance thereon, EJD, Reidy and McNeil assured Stedman that the product for which he had applied through EJD was the most favorable Transamerica could offer him, and that the policy could only issue with Stedman and his wife categorized as preferred, non-smoking insureds, rather than preferred "select." EJD, Reidy and McNeil further assured him that they had an email from Transamerica's general agent explicitly confirming that Stedman and his wife did not qualify for the preferred "select" category with the new product. Stedman stated he was confused by the conflicting reports, but unequivocally agreed he would purchase the insurance through EJD if the premiums and the terms were the same. He made it clear, however, that if the competing agent could deliver the policy with the more favorable status, he would purchase the policy through the competing agent.

16. EJD, Reidy and McNeil immediately contacted Champagne via email and related the conversation they had had with Stedman. Champagne again confirmed that the product for which Stedman had applied through EJD was the most favorable Transamerica could offer him, and that the policy could only issue with Stedman and his wife categorized as preferred, non-smoking insureds, rather than preferred "select."

17. Shortly thereafter, EJD, Reidy and McNeil were stunned to learn that Stedman had purchased the policy through the competing agent, and that the policy had issued with Stedman and his wife categorized as preferred "select", non-smoking insureds.

18. In selling the policy to Stedman, Transamerica availed itself of the work product of EJD, Reidy and McNeil (most notably the extensive medical documentation and information). The competing agent, upon information and belief, received the full commission monies EJD would have earned had Stedman purchased the policy through EJD.

**Count I**
**Breach of Contract - Transamerica**

19. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-18.

3

20. Transamerica entered into a valid and binding contract, supported by good and sufficient consideration, whereby Transamerica agreed to pay EJD commission monies for the policy of insurance sold to Stedman.

21. Transamerica, through duplicitous maneuverings, arranged for the policy to issue to Stedman through the competing agent under more favorable terms, and Stedman purchased the policy from the competing agent.

22. Transamerica refused to pay EJD commission monies for the policy of insurance sold to Stedman.

23. Transamerica thus breached the contract.

24. As a direct and proximate result thereof, EJD sustained damages.

   WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against Transamerica for all appropriate damages, together with attorney's fees and costs.

### Count II
### Breach of Contract - BISYS

25. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-24.

26. BISYS entered into a valid and binding contract, supported by good and sufficient consideration, whereby BISYS agreed to pay EJD commission monies for the policy of insurance sold to Stedman.

27. BISYS, through duplicitous maneuverings, arranged for the policy to issue to Stedman through the competing agent under more favorable terms, and Stedman purchased the policy from the competing agent.

28. BISYS refused to pay EJD commission monies for the policy of insurance sold to Stedman.

29. BISYS thus breached the contract.

30. As a direct and proximate result thereof, EJD sustained damages.

   WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against BISYS for all appropriate damages, together with attorney's fees and costs.

**Count III**
**Misrepresentation - Transamerica**

31. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-30.

32. Transamerica, through its general agent BISYS, represented to EJD that the policy for which Stedman had applied through EJD was the most favorable Transamerica could offer him, and that the policy could only issue with Stedman and his wife categorized as preferred, non-smoking insureds, rather than preferred "select."

33. Transamerica made the representation with knowledge of its falsity.

34. Transamerica made the representation with knowledge that it was a material representation upon which EJD would rely in attempting to sell the policy to Stedman.

35. EJD relied upon the representation, and in turn relayed the representation to Stedman.

36. As a result thereof, EJD failed to sell the policy to Stedman and sustained damages.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against Transamerica for all appropriate damages, together with attorney's fees and costs.

**Count IV**
**Misrepresentation - BISYS**

37. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-36.

38. BISYS represented to EJD that the policy for which Stedman had applied through EJD was the most favorable Transamerica could offer him, and that the policy could only issue with Stedman and his wife categorized as preferred, non-smoking insureds, rather than preferred "select."

39. BISYS made the representation with knowledge of its falsity.

40. BISYS made the representation with knowledge that it was a material representation upon which EJD would rely in attempting to sell the policy to Stedman.

41. EJD relied upon the representation, and in turn relayed the representation to Stedman.

42. As a result thereof, EJD failed to sell the policy to Stedman and sustained damages.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against BISYS for all appropriate damages, together with attorney's fees and costs.

5

## Count V
## Fraud and Deceit - Transamerica

43. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-42.

44. Transamerica's scheme of affording a higher selling agent preferential underwriting for his customers unbeknownst to EJD constitutes fraud and deceit.

45. Transamerica engaged in this fraudulent scheme knowingly and intentionally, and for the sole purpose of rewarding a higher selling agent at the expense of EJD.

46. EJD justifiably relied on Transamerica's deceitful conduct and misrepresentations when it performed virtually all of the work in efforts to sell Stedman the policy.

47. As a result thereof, EJD has been deprived of its earned commission, and Transamerica has been, and may continue to be, unjustly enriched.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against Transamerica for all appropriate damages, together with attorney's fees and costs.

## Count VI
## Fraud and Deceit - BISYS

48. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-47.

49. BISYS' complicity in Transamerica's scheme of affording a higher selling agent preferential underwriting for his customers unbeknownst to EJD constitutes fraud and deceit.

50. BISYS engaged in this fraudulent scheme knowingly and intentionally, and for the sole purpose of rewarding a higher selling agent at the expense of EJD.

51. EJD justifiably relied on BISYS' deceitful conduct and misrepresentations when it performed virtually all of the work in efforts to sell Stedman the policy.

52. As a result thereof, EJD has been deprived of its earned commission, and BISYS has been, and may continue to be, unjustly enriched.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against BISYS for all appropriate damages, together with attorney's fees and costs.

## Count VII
## Quantum Meruit - Transamerica

53. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-52.

54. EJD rendered services to Transamerica with the expectation of being compensated therefor.

55. Transamerica accepted these services and received benefit therefrom with the expectation of being liable therefor.

56. Transamerica has failed and/or refused to pay EJD for services rendered.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against Transamerica for all appropriate damages, together with attorney's fees and costs.

## Count VIII
## Quantum Meruit - BISYS

57. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-56.

58. EJD rendered services to BISYS with the expectation of being compensated therefor.

59. BISYS accepted these services and received benefit therefrom with the expectation of being liable therefor.

60. BISYS has failed and/or refused to pay EJD for services rendered.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against BISYS for all appropriate damages, together with attorney's fees and costs.

## Count IX
## Intentional Interference With Business Relations - Transamerica

61. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-60.

62. EJD had an advantageous business relationship with Stedman.

63. Transamerica knowingly induced Stedman to end that business relationship.

64. Transamerica's interference was improper in motive or means.

65. As a direct and proximate result thereof, EJD sustained damages.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against Transamerica for all appropriate damages, together with attorney's fees and costs.

## Count X
## Intentional Interference With Business Relations - BISYS

66. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-65.

67. EJD had an advantageous business relationship with Stedman.

68. BISYS knowingly induced Stedman to end that business relationship.

69. BISYS' interference was improper in motive or means.

70. As a direct and proximate result thereof, EJD sustained damages.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against BISYS for all appropriate damages, together with attorney's fees and costs.

## Count XI
## Unfair and Deceptive Trade Practices - Transamerica

71. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-70.

72. Transamerica is a concern engaged in trade or commerce within the meaning of M.G.L. c. 93A.

73. EJD is a concern engaged in trade or commerce within the meaning of M.G.L. c. 93A.

74. Transamerica's actions and inactions with respect to its breach of contract, misrepresentation, fraud and deceit, and intentional interference with business relations were committed willfully and in bad faith.

75. Transamerica's actions and inactions with respect to its breach of contract, misrepresentation, fraud and deceit, and intentional interference with business relations constitute unfair and deceptive trade practices violative of M.G.L. c. 93A.

76. As a direct and proximate result thereof, EJD sustained damages.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against Transamerica for all appropriate damages, together with attorney's fees and costs.

## Count XII
## Unfair and Deceptive Trade Practices - BISYS

77. EJD repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1-76.

78. BISYS is a concern engaged in trade or commerce within the meaning of M.G.L. c. 93A.

79. EJD is a concern engaged in trade or commerce within the meaning of M.G.L. c. 93A.

80. BISYS' actions and inactions with respect to its breach of contract and misrepresentation were committed willfully and in bad faith.

81. BISYS' actions and inactions with respect to its breach of contract and misrepresentation constitute unfair and deceptive trade practices violative of M.G.L. c. 93A.

82. As a direct and proximate result thereof, EJD sustained damages.

WHEREFORE, EJD respectfully requests that this Honorable Court award judgment against BISYS for all appropriate damages, together with attorney's fees and costs.

The Plaintiff,
by its Attorney,

David W. Krumsiek
(BBO #564564)
Perry, Krumsiek & Wayland, LLP
114 State Street
Boston, MA 02109
(617) 742-9012

Date:   November 20, 2003

9