UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 03-12304MLW

|  |  |
|---|---|
| EJD INSURANCE AGENCY, INC., | ) |
|  | ) |
| Plaintiff | ) |
|  | ) |
| v. | ) |
|  | ) |
| TRANSAMERICA OCCIDENTAL | ) |
| LIFE INSURANCE COMPANY and | ) |
| BISYS INSURANCE SERVICES, INC., | ) |
|  | ) |
| Defendants | ) |

## ANSWER OF DEFENDANT, TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, TO PLAINTIFF, EJD INSURANCE AGENCY, INC.'S COMPLAINT

Now comes the Defendant, Transamerica Occidental Life Insurance Company and, without waiver of, or prejudice to, its right to seek arbitration of the Plaintiff's claims, in accordance with a prior written agreement between the parties, does hereby respond to the Plaintiff's Complaint as follows:

1.     The Defendant Transamerica Occidental Life Insurance Company (hereinafter "Transamerica") states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 1 of Plaintiff's Complaint and therefore denies the same.

2.     The Defendant Transamerica admits the allegations set forth in the first two sentences of Paragraph 2 of the Plaintiff's Complaint. Transamerica denies the allegations set forth in the third sentence of the Paragraph 2 of the Plaintiff's Complaint.

3.     The Defendant Transamerica denies that BISYS Insurance Services, Inc. (hereinafter "BISYS") was the general agent of Transamerica. Transamerica states that it is without knowledge or information sufficient to form a belief as to the remainder of the allegations set forth or incorporated in Paragraph 3 of Plaintiff's Complaint, and therefore denies the same.

4.     Paragraph 4 of the Plaintiff's Complaint sets forth a legal conclusion and, therefore, no response is required. Transamerica denies the Plaintiff's damages as alleged.

5.     The Defendant Transamerica repeats by reference its answers to Paragraphs 1-4 of the Complaint and incorporates them herein.

6.     The Defendant Transamerica Occidental Life Insurance Company (hereinafter "Transamerica") states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 6 of Plaintiff's Complaint and therefore denies the same.

7.     The Defendant Transamerica admits only that Reidy and McNeil identified a life insurance product which they considered appropriate for, and attractive to, Stedman. The Defendant Transamerica is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth or incorporated in Paragraph 7 of Plaintiff's Complaint and therefore denies the same.

8.     The Defendant Transamerica admits only that Reidy and McNeil entered into contracts with Transamerica whereby Reidy and McNeil were authorized to solicit and sell life insurance policies issued by Transamerica, including the policy identified in Paragraph 8 of the Plaintiff's Complaint at the approximate premium and for the death benefit identified in Paragraph 8. The Defendant Transamerica denies that BISYS was Transamerica's general agent. Defendant Transamerica denies all other allegations contained in Paragraph 8 not specifically admitted.

9.     The Defendant Transamerica admits only that an application was initiated by McNeil in November of 2002. The Defendant Transamerica is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 9 of the Plaintiff's Complaint, and therefore denies the same.

10.    The Defendant Transamerica admits only that Stedman completed the medical component of the application and submitted it to Transamerica in January of 2003, through Reidy and McNeil. Transamerica denies the remainder of the allegations in Paragraph 10.

11.     The Defendant Transamerica admits only that it advised Reidy and McNeil that the policy would likely issue with Stedman and his wife categorized as preferred, non-smoking insureds.  The Defendant Transamerica is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 11 of the Plaintiff's Complaint, and therefore denies the same.

12.     The Defendant Transamerica admits that it signed an instrument dated February 6, 2003 designating McNeil as his agent or record relative to the Transamerica policy.  The Defendant Transamerica is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 12 of the Plaintiff's Complaint, and therefore denies the same.

13.     The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 13 of Plaintiff's Complaint and therefore denies the same.

14.     The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 14 of Plaintiff's Complaint and therefore denies the same.

15.     The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 15 of Plaintiff's Complaint and therefore denies the same.

16.     The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 16 of Plaintiff's Complaint and therefore denies the same.

17.     The Defendant Transamerica admits only that the policy issued with Stedman categorized as a preferred, select, non-smoking insured.  Transamerica specifically denies that the policy issued with Mr. Stedman's wife categorized as a preferred, select non-smoking insured.  The Defendant Transamerica is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 17 of the Plaintiff's Complaint, and therefore denies the same.

18.     The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 18 of Plaintiff's Complaint and therefore denies the same.

19.     The Defendant Transamerica repeats by reference its answers to Paragraphs 1-18 of the Complaint and incorporates them herein.

3

20.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 20 of the Plaintiff's Complaint.

21.   The Defendant Transamerica admits only that Stedman purchased the policy from the competing agent. Transamerica denies all other allegations set forth or incorporated in Paragraph 21 of the Plaintiff's Complaint.

22.   The Defendant Transamerica admits the allegations set forth in Paragraph 22 of the Plaintiff's Complaint and, by way of further answer, states that no commission monies were owed to EJD on the policy of insurance issued to Stedman.

23.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 23 of the Plaintiff's Complaint.

24.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 24 of the Plaintiff's Complaint.

25.   The Defendant Transamerica repeats by reference its answers to Paragraphs 1-24 of the Complaint and incorporates them herein.

26.   The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 26 of Plaintiff's Complaint and therefore denies the same.

27.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 27 of the Plaintiff's Complaint.

28.   The Defendant Transamerica states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 28 of Plaintiff's Complaint and therefore denies the same.

29.   The Defendant Transamerica states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 29 of Plaintiff's Complaint and therefore denies the same.

30.   The Defendant Transamerica states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 30 of Plaintiff's Complaint and therefore denies the same.

31.   The Defendant Transamerica repeats by reference its answers to Paragraphs 1-30 of the Complaint and incorporates them herein.

4

32.    The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 32 of the Plaintiff's Complaint.

33.    The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 33 of the Plaintiff's Complaint.

34.    The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 34 of the Plaintiff's Complaint.

35.    The Defendant Transamerica states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 35 of Plaintiff's Complaint and therefore denies the same.

36.    The Defendant Transamerica admits only that the Plaintiff did not sell a policy to Stedman. Transamerica denies that Plaintiff has sustained any damages which it may recover against Transamerica.

37.    The Defendant Transamerica repeats by reference its answers to Paragraphs 1-36 of the Complaint and incorporates them herein.

38.    The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 38 of Plaintiff's Complaint and therefore denies the same.

39.    The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 39 of Plaintiff's Complaint and therefore denies the same.

40.    The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 40 of Plaintiff's Complaint and therefore denies the same.

41.    The Defendant Transamerica states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 41 of Plaintiff's Complaint and therefore denies the same.

42.    The Defendant Transamerica states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 42 of Plaintiff's Complaint and therefore denies the same.

43.     The Defendant Transamerica repeats by reference its answers to Paragraphs 1-42 of the Complaint and incorporates them herein.

44.     The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 44 of the Plaintiff's Complaint.

45.     The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 45 of the Plaintiff's Complaint.

46.     The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 46 of the Plaintiff's Complaint.

47.     The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 47 of the Plaintiff's Complaint.

48.     The Defendant Transamerica repeats by reference its answers to Paragraphs 1-47 of the Complaint and incorporates them herein.

49.     The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 49 of the Plaintiff's Complaint.

50.     The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 50 of Plaintiff's Complaint and therefore denies the same.

51.     The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 51 of Plaintiff's Complaint and therefore denies the same.

52.     The Defendant Transamerica states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 52 of Plaintiff's Complaint and therefore denies the same.

53.     The Defendant Transamerica repeats by reference its answers to Paragraphs 1-52 of the Complaint and incorporates them herein.

54.     The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 54 of the Plaintiff's Complaint.

55.     The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 55 of the Plaintiff's Complaint.

6

56.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 56 of the Plaintiff's Complaint.

57.   The Defendant Transamerica repeats by reference its answers to Paragraphs 1-56 of the Complaint and incorporates them herein.

58.   The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 58 of Plaintiff's Complaint and therefore denies the same.

59.   The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 59 of Plaintiff's Complaint and therefore denies the same.

60.   The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 60 of Plaintiff's Complaint and therefore denies the same.

61.   The Defendant Transamerica repeats by reference its answers to Paragraphs 1-60 of the Complaint and incorporates them herein.

62.   The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 62 of Plaintiff's Complaint and therefore denies the same.

63.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 63 of the Plaintiff's Complaint.

64.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 64 of the Plaintiff's Complaint.

65.   The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 65 of the Plaintiff's Complaint.

66.   The Defendant Transamerica repeats by reference its answers to Paragraphs 1-65 of the Complaint and incorporates them herein.

67.   The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 67 of Plaintiff's Complaint and therefore denies the same.

68.  The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 68 of Plaintiff's Complaint and therefore denies the same.

69.  The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 69 of Plaintiff's Complaint and therefore denies the same.

70.  The Defendant Transamerica states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth or incorporated in Paragraph 70 of Plaintiff's Complaint and therefore denies the same.

71.  The Defendant Transamerica repeats by reference its answers to Paragraphs 1-70 of the Complaint and incorporates them herein.

72.  The Defendant Transamerica admits the allegations set forth or incorporated in Paragraph 72 of the Plaintiff's Complaint.

73.  The Defendant Transamerica admits the allegations set forth or incorporated in Paragraph 73 of the Plaintiff's Complaint.

74.  The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 74 of the Plaintiff's Complaint.

75.  The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 75 of the Plaintiff's Complaint.

76.  The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 76 of the Plaintiff's Complaint.

77.  The Defendant Transamerica repeats by reference its answers to Paragraphs 1-76 of the Complaint and incorporates them herein.

78.  The Defendant Transamerica admits the allegations set forth or incorporated in Paragraph 78 of the Plaintiff's Complaint.

79.  The Defendant Transamerica admits the allegations set forth or incorporated in Paragraph 79 of the Plaintiff's Complaint.

80.  The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 80 of the Plaintiff's Complaint.

81.    The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 81 of the Plaintiff's Complaint.

82.    The Defendant Transamerica denies the allegations set forth or incorporated in Paragraph 82 of the Plaintiff's Complaint.

83.    By way of further answer, Transamerica states it entered into a certain agreement with the Plaintiff, effective as of November 20, 2002, entitled "Independent Producer Contract," duly executed by or on behalf of Transamerica and the Plaintiff, a true and accurate copy of which is attached hereto and incorporated herein by reference as Transamerica's Exhibit "A"; and that pursuant to the terms and conditions of said contract, and more specifically, Section 7.2 thereof, the Plaintiff is required, inter alia, to submit the claims it has advanced against Transamerica herein, to binding arbitration to take place in Los Angeles, California.

## FIRST AFFIRMATIVE DEFENSE

The Plaintiff is barred and estopped from proceeding herein based upon the arbitration clause contained in the written agreement between the Plaintiff and Transamerica.

## SECOND AFFIRMATIVE DEFENSE

The Plaintiff's damages were caused by the acts of a third party for whose conduct the Defendant Transamerica is not responsible.

## THIRD AFFIRMATIVE DEFENSE

The Plaintiff has waived any and all claims for punitive or exemplary damages against Transamerica.

## FOURTH AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction over the Plaintiff's claims against Transamerica.

## FIFTH AFFIRMATIVE DEFENSE

The Court lacks personal jurisdiction over Transamerica.

## SIXTH AFFIRMATIVE DEFENSE

The Plaintiff has failed to satisfy a condition precedent to its right to assert claims against Transamerica

## SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff has failed to assert its claims in a timely fashion.

WHEREFORE, Transamerica requests that this Honorable Court:

(a)    Issue an interlocutory order herein, in accordance with 9 U.S.C., §3, staying the within action until the Plaintiff's claims against Transamerica have been arbitrated in accordance with the terms of the written agreement between said parties;

(b)    Award Transamerica its costs of suit; and

(c)    Enter whatever other and further relief the Court deems meet and just in the premises.

Respectfully submitted,

TRANSAMERICA OCCIDENTAL
LIFE INSURANCE COMPANY

By its attorneys,

Kevin M. Dalton, BBO# 112710
GLOVSKY & GLOVSKY
8 Washington Street
Beverly, MA   01915
(978) 922-5000

Dated:   February 6, 2004

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and the attorney of record for each, (other) party by mail (by hand) on   2/6/04

10

Exhibit "A"

# INDEPENDENT PRODUCER CONTRACT

This is an agreement, effective on the Date of Contract set forth below, between **Transamerica Occidental Life Insurance Company** (referred to as "we", "us" or "the Company") and the **Independent Producer** named below (referred to as "you"). The terms of this agreement are as follows:

## 1.   APPOINTMENT

You are appointed for the purpose of soliciting applications for insurance and otherwise transacting the business of this agreement.

Your activities under this agreement will be subject to the supervision of the office or agency through which you represent us from time to time.  This office or agency will be referred to in this agreement as your Supervising Office.

You agree to comply with all applicable laws and regulations, and to diligently devote yourself to the business of this appointment in order to sell new insurance and prevent the lapse of existing insurance.

### 1.1   TERRITORY; NON-EXCLUSIVITY

Subject to the approval of your Supervising Office, unless otherwise specified by us, you are authorized to solicit applications in any jurisdiction in which we are licensed to transact insurance and in which you are licensed and authorized to represent us. We reserve the right to limit your territory at any time.

You are not obligated to represent us exclusively, and you do not have an exclusive right to solicit or negotiate policies for us in any area.

You agree that you will not solicit or accept business within the states of Hawaii or New York, or from any resident of Hawaii or New York, without our written consent.

### 1.2   INDEPENDENT CONTRACTOR

You are an independent contractor. Nothing contained in this agreement is to be construed to create the relation of employer and employee between the Company and you.  You may exercise your own judgment as to the time and manner in which you may perform the services required to be performed by you under this agreement.  We may, from time to time, prescribe rules and regulations concerning the conduct of the business covered by this agreement which do not interfere with such freedom of action.

## 2.   SOLICITATION OF APPLICATIONS

We will inform you from time to time which products you are authorized to sell. Solicitation of applications for insurance authorized under this agreement will be performed by you or by solicitors in accordance with the terms set forth below.

A solicitor is a properly licensed individual or firm authorized by us to solicit applications for insurance in your name.

You agree not to allow any solicitor to engage in the services authorized under this agreement, except in accordance with this Section.

At our option, we may refuse to authorize any proposed solicitor and may terminate any authorization of a solicitor. You will be solely responsible for the payment of any compensation to solicitors, and you agree to hold us harmless from all claims for commissions or other compensation by any solicitor.

## 2.1   LICENSING

Neither you nor any solicitor may engage in any activities under this agreement unless and until you or they are properly licensed to perform such services in the particular State or jurisdiction involved in accordance with all applicable laws and regulations, including, but not limited to, any certification or continuing education requirements.

You agree to undertake and pay for all actions necessary to acquire and maintain any necessary licenses for yourself and/or the solicitors. We will take the necessary actions, including the payment of applicable fees, to appoint you and the solicitors to represent us in the states in which you and they reside. We will appoint you and the solicitors to represent us in additional states at your expense.

## 2.2   SUPERVISION

You are responsible for the performance of solicitors and any employees you may have. You agree to take all necessary steps to communicate the Company's rules and regulations to such persons, and to assure that they comply with such rules and regulations, as well as all other applicable laws and regulations.

# 3.   RESPONSIBILITIES OF THE INDEPENDENT PRODUCER

You agree to abide by the following in the conduct of your activities under this agreement:

## 3.1   COMPANY REGULATIONS

To the extent they do not conflict with the terms of this agreement, you will conform to the rules and regulations of the Company now or hereafter in force. Such rules and regulations will constitute a part of this agreement. This provision shall not be construed to alter the relationship of the parties as provided in Section 1.2 above.

## 3.2   LIMITATION OF AUTHORITY

You have no authority to alter, modify, waive or change any of the terms, rates or conditions of our contracts or policies whether or not covered by this agreement. You have no authority to obligate us in any manner whatsoever nor to receive monies due to us, except as otherwise provided in this agreement or as may be authorized in writing by us.

## 3.3   COMPANY RECORDS

All documents, records, software and other data and information, in whatever form they may be, which pertain to the Company's policyholders or any other business of the Company, are and will remain the property of the Company. Any such property in your possession shall be at any time and all times open to inspection by the Company or its authorized representative, and upon termination of this agreement you will promptly turn all such property over to the Company or its authorized representatives.

You acknowledge that all documents, records, software and other data, information and supplies referred to in this Section 3.3 are confidential and proprietary to the Company, and you agree to preserve the confidentiality and privacy of the Company in all of the same; and you further agree that you will not, without the Company's prior written consent,

release or disclose any of the same or their contents to any person, or otherwise use any of the same or their contents in any manner, except in furtherance of the business of this agreement or as required by legal process.

Nothing contained in this Section 3.3 is intended to restrict your right to retain possession of your records and other materials relating solely to your solicitors.

## 3.4 ACCOUNTS AND RECORDS

You agree that you will keep customary and accurate accounts of receipts and disbursements and will, at our request and in accordance with our instructions, account for all policies, receipts, premiums and other monies or securities received and all property and supplies received from the Company. We may, at any time, make copies of the records of such accounts, records and documents, and all such records, documents, supplies and other property relating to the business transacted under this agreement will be the property of the Company, open to inspection at all times by our authorized representatives, and at the termination of this agreement will be delivered to us upon demand. We will furnish you a current statement of your commission account within a reasonable time after receipt of a written request from you.

## 3.5 COLLECTION AND REMITTANCE OF COMPANY MONEY

Where authorized by us, you may accept premiums in accordance with our rules and regulations in force at the time of payment. We have the right at any time to revoke such authority in whole or in part and to limit it in any way.

ALL MONIES OR SECURITIES RECEIVED BY YOU AS FULL OR PARTIAL PAYMENT OF PREMIUMS OR FOR ANY OTHER ITEM, WITHOUT EXCEPTION, SHALL BE HELD BY YOU IN TRUST SEPARATE FROM YOUR OWN OR OTHER FUNDS AND WILL BE IMMEDIATELY DELIVERED AND PAID TO THE COMPANY. Such remittances must be applied to the relevant item. You are not authorized to deposit any such monies or checks in your own account or any trust account, nor to accept any check made payable to you for any premium or other item.

## 3.6 ADVERTISING

You agree that you will not place into use, or distribute to any person, any advertising, sales material or other document (including, without limitation, illustrations, telephone scripts and training materials) referring directly or indirectly to the Company or to any Company policy, or cause, authorize or permit other person to do so, without our prior written consent. You agree that you will not use the name of the Company on any business card, letterhead or marquee or in any directory listing, or in any other manner, or cause, authorize or permit any other person to do so, without our prior written consent.

## 3.7 INDEMNIFICATION

You agree to indemnify us and hold us harmless from any liability, loss, cost, claim or damage, including legal and other expenses and attorneys' fees reasonably incurred, caused by your negligence or misconduct or the negligence or misconduct of your employees or of a solicitor.

## 3.8 ERRORS AND OMISSIONS

You are encouraged to maintain errors and omissions insurance covering your activities under this agreement. If we should require you to carry such insurance at any time, the following will apply:

(i) You agree to maintain in force, at your own expense, while this agreement is in effect, errors and omissions insurance covering your business in an amount specified by us from time to time, and on which the Company shall be named as an additional insured.

(ii) You agree to provide us with copies of the current binders evidencing the issuance of the errors and omissions insurance required under Section (i) at the time of execution of this agreement, and within ten business days of each date such insurance is discontinued, suspended, reduced or terminated for any reason.

CNT 550 ED. 1-98

-3-

## 4. COMPANY RIGHT OF ACTION

We are not obligated to accept any business produced by you or by a solicitor. We may reject applications for insurance without specifying the reason therefor, as well as settlements tendered or made thereunder, or take up and cancel any policy for any reason and return the premium thereon or any part thereof.

We in our sole discretion may at any time and from time to time do the following:

(i)   modify or amend any policy form;

(ii)  fix or change maximum and minimum limits on the amount for which any policy form may be issued;

(iii) modify or alter the conditions or terms under which any policy form may be sold or regulate its sale in any way;

(iv)  discontinue or withdraw any policy form from any geographic area or market segment, without prejudice to continuation of such form in any other area or market segment;

(v)   cease doing business in any area.

## 5. COMPENSATION

For each policy sold under this agreement, we will pay you commissions as set forth in the applicable Commission Rate Schedule. You may also be eligible for compensation under other programs established by us from time to time. Payment of commissions and any other compensation will be subject to the terms and conditions of this agreement and to our rules and regulations in effect from time to time. Such rules and regulations may be changed by us at any time without notice.

The commissions and any other compensation payable by us to you will be payment in full for all services performed by you. Except as we may otherwise agree, you are not entitled to reimbursement for any expenses incurred by you.

### 5.1 COMMISSIONS

**General** - The "applicable Commission Rate Schedule" means the Commission Rate Schedule in effect from time to time for business produced by you. Commission rates are established by your Supervising Office. Commission rates and Commission Rate Schedules are subject to change without notice. Information regarding commission rates in effect may be obtained from your Supervising Office. We may provide you with a new Commission Rate Schedule from time to time, but your failure to receive a new Commission Rate Schedule will not prevent new commission rates from becoming effective.

**Repayment of Commissions** - If any commission or other compensation to which you are not entitled under the terms of this agreement is paid to or retained by you, you will pay the same to the Company upon demand. You will pay to us upon demand all commissions received by or credited to you, or premiums collected, or evidence of indebtedness representing the same, taken on applications on which policies are not issued by us, or on policies declined by the applicant, or on policies canceled by us, and all commissions received or credited on premiums or any part thereof which for any reason we may return. In case of any provision requiring a refund of commissions or other compensation, we may, at our election, debit your account for the amount of the refund without demand or notice, or may demand the refund, or both, but debiting your account in such manner will not relieve you of your obligation to make the refund.

**Changes in Compensation** - We reserve the right to change the rate of commissions and/or any other compensation payable under this agreement. Any such change will apply only to policies issued or other triggering events occurring after the effective date of the change.

**When Due** - Commissions will be paid in accordance with our normal commission processing schedule. Commissions will be payable only on premiums paid in cash to and accepted by us on policies which were produced hereunder by you or by solicitors. No premium will be considered paid in cash to the Company until it has been actually collected and transmitted to us and recorded on our records. Commissions and other compensation will accrue only as such premiums otherwise would become due.

**Commissions Paid in Advance** - If we pay you a commission or other compensation on a premium which is or becomes due but which has not yet actually been paid to the Company, and if such premium is not paid in cash to the Company, you will refund any commission or other compensation which you have received on such premium.

**Conditions** - Commissions and any other compensation under this agreement will be payable to you only if and so long as you are continuously and properly licensed to transact insurance business for us and we may legally pay such commissions and other compensation.

**Accounting Year** - We reserve the right at any time and from time to time, without notice to you, to change the period comprising our accounting year or subdivisions thereof.

## 5.2 COMMISSIONS AFTER TERMINATION

(i) Unless this agreement is terminated under Section 8.2, commissions will continue to be payable for the vesting period applicable to this agreement at the time the policy was written.

(ii) Any commissions payable after your death or dissolution will be paid to your executors, administrators, successors or assigns.

# 6. LIEN AND OFFSETS

You grant us a first lien on all commissions and any other compensation payable by us to you under this agreement or under any other existing or future agreement with us, as security for the payment of any existing or future debit balance or other indebtedness of yours to us. We may at any time and from time to time, with or without notice or judicial action, exercise our lien by offsetting such indebtedness against any commissions and other compensation otherwise due to you. These liens shall not be extinguished by the termination of this agreement or any other agreement.

All debit balances and other indebtedness of yours to us will be debited to your account, but debiting your account will not relieve you of your obligation to repay the indebtedness. You may not offset against any such indebtedness any compensation accrued or to accrue under this agreement or under any other agreement with us.

We will be under no obligation to pay any commissions or other compensation to you, your executors, administrators or assigns, under this agreement or under any other existing or future agreement with us now or hereafter existing as long as your account has a debit balance. Any debit balance of your account shall be payable to us upon demand and shall bear interest, payable monthly, at the rate declared by us from time to time. Any future change in interest rate may, at our option, be applied to the then remaining balance of any debit balance theretofore created as well as to debit balances thereafter created.

## 7.    DISPUTES AND LITIGATION

Both parties agree to cooperate fully with each other in the resolution of all matters arising out of the business of this agreement. We also agree that any disputes between you and us will be settled through binding arbitration.

### 7.1    COMPLAINTS AND CLAIMS

You agree to notify us promptly of any complaint, claim or dispute involving an applicant, policy, policyholder or producer.

You will not litigate any dispute with an applicant or policyholder, on any matter relating to the business of this agreement, without our prior written consent.

We may settle any claim against us or you arising out of the business of this agreement. If you disagree with our settlement, you may seek arbitration pursuant to Section 7.2.

### 7.2    DISPUTE RESOLUTION

The parties agree that this agreement involves "commerce" within the meaning of the Federal Arbitration Act, and that any dispute between the parties arising out of or related to this agreement will be resolved by binding arbitration in accordance with this Section and the procedural and discovery rules of the Federal Arbitration Act. The arbitration will take place in Los Angeles, California, unless we mutually agree to another location. The arbitration will be determined by one neutral arbitrator as agreed upon by the Company and you. If the parties fail to appoint an arbitrator on a timely basis or are unable to agree on the choice of an arbitrator on a timely basis, the arbitrator will be appointed by the office of the Judicial Arbitration and Mediation Service in the city where the arbitration takes place, or by another mutually agreeable arbitration service. The arbitrator's decision will be binding on the parties and the decision will be final with no right of appeal. The award of the arbitrator may be entered as a final judgment in any court which has jurisdiction thereof. The cost of arbitration, including the fees of the arbitrator, will be borne by the party or parties as the arbitrator decides.

EACH PARTY HERETO HEREBY WAIVES THE RIGHT TO A TRIAL BY EITHER A JURY OR A COURT, INCLUDING BUT NOT LIMITED TO A TRIAL OF ANY ISSUE CONCERNING THE VALIDITY OF THIS SECTION 7.2 OR ANY PORTION THEREOF, AND THE RIGHT OF APPEAL FROM THE ARBITRATOR'S AWARD. EACH PARTY HERETO WAIVES ANY CLAIM TO RECOVER PUNITIVE DAMAGES AND NON-COMPENSATORY DAMAGES AGAINST THE OTHER PARTY.

## 8.    TERMINATION AND SUSPENSION

Either party may terminate this agreement on five days' written notice. In addition, we may terminate this agreement without prior notice for specified reasons.

### 8.1    TERMINATION UPON NOTICE

This agreement may be terminated with or without cause by either you or us upon five days' written notice to the other party. We may also terminate this agreement if you fail to meet production standards established by us from time to time. The day the notice is deposited in the mail addressed to our last known address or to your last known address according to our records, as the case may be, or, if the mail is not used, the day it is delivered to you or to an officer of the Company, as the case may be, will be the first day of the five day period.

## 8.2 EARLY TERMINATION BY THE COMPANY

We may terminate this agreement immediately, or at any time thereafter, at our option, upon written notice to you if:

(i)   you fail to comply with our rules and regulations or the laws of any applicable state or jurisdiction or regulations of the Department of Insurance thereof; or

(ii)  you fail to conform to the terms and conditions of this agreement or any other existing or future agreement with us; or

(iii) you at any time commit any illegal, dishonest or fraudulent acts in connection with any business of the Company; or

(iv)  you persuade or attempt to persuade any producer of ours to leave our service; or

(v)   you induce or attempt to induce any policyholder to discontinue the payment of premiums on or to release or surrender any policy in the Company whether or not covered by this agreement; or

(vi)  you violate the provisions of Section 3.5 hereof relating to immediate remittance of monies to us; or

(vii) in our opinion, you become physically or mentally disqualified from performing the terms of this agreement; or

(viii) in our opinion, you so conduct yourself as to injure the Company's standing or good name in the community or elsewhere.

If this agreement is terminated pursuant to the foregoing paragraph, except on account of mental or physical disability, we may, at our option and without further notice to you, declare all claims by you to commissions or other compensation to be forfeited and void.

Notice of immediate termination of this agreement will become effective upon delivery of the notice to you by whatever means of transmission may be used by us for the purpose. If the mail is used and delivery is not made to you prior to the close of the day after the notice was deposited in the mail addressed to your last known address according to our records, the notice will in any event become effective at the close of the day after it was deposited in the mail.

## 8.3 AUTOMATIC TERMINATION

Your death, dissolution or bankruptcy, or the revocation, suspension or non-renewal of your license, will automatically terminate this agreement.

## 8.4 SUSPENSION

Upon notice to you, we may suspend your authority to act under this agreement while we investigate any matter which may give rise to a right to terminate this agreement under Section 8.2.

# 9.   MISCELLANEOUS PROVISIONS

Certain provisions of this agreement are emphasized for the convenience of the reader. Nevertheless, all provisions apply equally.

## 9.1 PREVIOUS AGREEMENTS

Any and all prior agreements between the parties hereto authorizing the solicitation of insurance are hereby terminated and are superseded by this agreement.

CNT 560 ED. 1-98

## 9.2  AMENDMENTS

We will not be bound by any promise, agreement, understanding or representation heretofore or hereafter made unless the same is made by an instrument in writing, signed by one of our officers, which expresses by its terms an intention to modify this agreement.

## 9.3  FORBEARANCE

Forbearance or neglect on the part of the Company to insist upon compliance with the terms of this agreement or the rules and regulations of the Company shall not be construed as or constitute a waiver thereof.

## 9.4  AGREEMENT NON-ASSIGNABLE

You may not assign this agreement or any of the rights, authorities and benefits provided hereunder without our prior written consent. We agree not to withhold our consent unreasonably. Any attempted assignment as collateral security or assignment for the benefit of creditors will be subject to our rules and policies then in effect.

## 9.5  SEVERABILITY

This is a severable agreement. If any provision of this agreement would require a party to take action prohibited by applicable federal or state law or prohibit a party from taking action required by applicable federal or state law, then it is the intention of the parties hereto that such provision shall be enforced to the extent permitted under the law, and, in any event, that all other provisions of this agreement shall remain valid and duly enforceable as if the provision at issue had never been a part of this agreement.

## 9.6  INDEPENDENT AGREEMENT

The compensation provided by this agreement is separate from any compensation or consideration provided under any other agreement you may have with us or with one of our affiliates. Except as set forth in our applicable rules and regulations, your activities under this agreement will not be taken into account for purposes of any compensation or benefits under any such agreement.

## 9.7  APPLICABLE LAW

This agreement shall be construed in accordance with the laws of the State of California, without giving effect to principles of conflict of laws.

## 9.8  SURVIVAL

The following provisions will survive the termination of this agreement: Sections 3, 5, 6, 7, 9.4, 9.5, 9.6, 9.7.


# 10.  CORPORATIONS; PARTNERSHIPS

The additional provisions set forth below will apply if you are a corporation, partnership, or any entity other than an individual.

## 10.1  OFFICIAL ACTIONS

You may designate one or more individuals to deal with us on your behalf. Such designation must be made by your board of directors if you are a corporation or by any general partner if you are a partnership. In the absence of a designation, we may (but are not obligated to) deal with your president or any vice president (if you are a corporation) or any general partner (if you are a partnership).

**10.2  CHANGES**

You agree to inform us of any changes in your legal structure, and of any changes in your officers or partners. You also agree to inform us of any transfer of your stock or partnership interests. Upon receipt of such information, we may elect to terminate this agreement upon five days' written notice to you.

**10.3  STATUS**

We may, from time to time, require you to provide us with evidence of your continued existence and good standing.

**10.4  SPECIAL PROVISIONS REGARDING TERMINATION**

We may terminate this agreement upon five days' written notice to you if any of your officers or partners, or anyone else deemed by us to be a key member of your organization:  (i) dies; (ii) resigns; (iii) ceases, in our judgment, to be actively involved in your organization; or (iv) has a license suspended, revoked, cancelled or otherwise not renewed. The provision of Section 8.2 shall apply not only to your actions, but also to actions of any of your officers, partners, or anyone else deemed by us to be a key member of your organization.

Executed at Los Angeles, California.

_____
Date of Contract


INDEPENDENT PRODUCER

_____
Printed Name

_____
Address-Street

_____
City, State, Zip

INDIVIDUAL INDEPENDENT PRODUCER

_____
Signature

NON-INDIVIDUAL INDEPENDENT PRODUCER

By: _____

Name: _____

Title: _____


**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY**
1150 South Olive
Los Angeles, California 90015-2211


Senior Vice President

CNT 550 ED. 1-98

Executed at Los Angeles, California.

NOVEMBER 20, 2002

Date of Contract

INDEPENDENT PRODUCER

TRANSAMERICA OCCIDENTAL LIFE
INSURANCE COMPANY
1150 South Olive
Los Angeles, California 90015-2211

EJD INSURANCE AGENCY INC

Printed Name

10 FORBES ROAD EAST
1ST FLOOR
BRAINTREE, MA 02184

Address, Street, City, State, Zip

Signature is not required. It is agreed that this
Contract will be binding with a signature on the
Application for Appointment or Notice of
Contract Replacement Acknowledgment Form.

INDIVIDUAL INDEPENDENT PRODUCER

Jim Bowman
Senior Vice President

_____
Signature

NON-INDIVIDUAL INDEPENDENT PRODUCER

By:_____

Name:_____

Title:_____

CNT 550 ED. 8-02
CT50199L                              -10-

FEB-10-2003 14:59   INNOVATIVE SOLUTIONS INS.   310 851 8211   P.03

**CONTRACT APPLICATION FOR:**

( ) Agent Contract (Full-time Career Agent)

( ) Independent Producer Contract (Broker)

( ) Sales Director (Application required for individuals not currently contracted with Transamerica)

**TRANSAMERICA INSURANCE & INVESTMENTS**

Requesting GA Name: _ISIS_   GA Code: _3052_   Date: _11/20/02_

---

**PART I**   To be completed by applicant. Please read carefully and answer all questions.

Applicant is: ( ) An Individual (✓) A Corporation ( ) A Partnership

**I am requesting an agreement with:**

( ) Transamerica Occidental Life Insurance Company (TOLIC—Fixed Life and/or Long-Term Care Insurance)

( ) Transamerica Life Insurance and Annuity Company (TALIAC—Fixed Annuities and/or Retirement Services)

( ) Transamerica Assurance Company (TAC—Worksite Marketing)

I am also requesting the company(ies) make application(s) to the Department(s) of Insurance for the issuance of a license and/or appointment authorizing the solicitation of applications on behalf of the company(ies). I understand that I may not solicit applications for the company(ies) until I am properly licensed and appointed.

( ) I intend to solicit Long-Term Care Insurance applications for TOLIC (check if applicable, in addition to contract type).

(Please see Part VI for additional provision regarding applicant's agreement to be bound by the Agent and/or TPC contract or contracts.)

---

**PART II**   Applicant Name and Address Information

**Section A:** (If applicant is an individual, complete section A only.)

Last Name: _Duffy Jr_   First Name: _Edward_   Middle Name: _J_

Social Security Number: _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_   Do you plan to market using a DBA? _Yes_ _✓ No_ If so, please provide the supporting documentation, i.e., approval of required jurisdiction(s). DBA Name: _____
(See page six for general instructions concerning Taxpayer Identification Number (TIN) Information.)

Home Phone # ( ) _____   Cell Phone # ( ) _____   Pager # ( ) _____

Business # (781) _548-2847_   Fax # (781) _848-9372_   E-mail Address: _ed@LexFinplan.com_

Mr. ✓ Mrs. ___ Ms. ___   D.O.B. _5/31/1959_   Driver's License # _013523126_   State: _MA_

Business Address: _10 Forbes Road East 1st Floor_   _Braintree_   _MA_   _02184_
Mailing Address: Street / City / State / Zip Code

Residence Address: _17 Colonial Road_   _Milton_   _MA_   _02186_
Street / City / State / Zip Code

How long at this residence address? _2_ Years ___ Months   If less than five years, please provide past five years below:

Residence Address: _57 Colonial Road_   _Milton_   _MA_   _02186_
Street / City / State / Zip Code

---

**Section B:** (If applicant is a corporation or partnership, complete section B only.)

Partnership or Corporate Firm Name: _EJD Insurance Agency, Inc._   EIN: _04-3440373_

Do you plan to do business as a DBA? ___ Yes _✓ No_ If so, please provide the supporting documentation, i.e., approval of required jurisdiction(s), DBA Name: _____, and EIN for DBA if required _____
(See page six for general instructions concerning Taxpayer Identification Number (TIN) Information)

FEB-10-2003  14:59    INNOVATIVE SOLUTIONS INS.    310 851 8211    P.04

Business # (781) 848 2247  Fax # (781) 848 - 9372    E-mail Address: ed@lexfinplan.con

Business Address:    Street    City    State    Zip Code

Lexington Financial Planning Group, Inc.

Mailing Address, if different from business address:

Ten Forbes Rd. East Braintree, MA  02184

Name of person who will sign as principal of this organization: Edward J. Duffy, Jr. Title President

(Please complete Part II, Section A for principal)
(A Solicitor Application form, TOA 560, must be completed for additional principals and signing officers.)
For corporation/partnership, give names of all officers and principals, and their titles. If necessary, please continue on a separate sheet of paper. (Please complete a Solicitor Application form for each person who will solicit Transamerica business on behalf of the corporation or partnership.)

| NAME | TITLE | NAME | TITLE |
|------|-------|------|-------|
| Edward J. Duffy, Jr. | President | | |
| | | | |
| | | | |
| | | | |

## PART III    Employment/Appointment History

1) How long have you been an insurance agent or broker? __20 years__. Below, please list the companies that you currently represent

| Company Name | Effective Date |
|--------------|----------------|
| First Colony Life | 1999 |
| Zurich Kemper Life | 1999 |
| Guardian Life | 1984 |

2) If this information covers less than five years, please provide details of employment history to complete the five-year period in the following section.

| Employer | Address | Position | From | To |
|----------|---------|----------|------|-----|
| | | | | |
| | | | | |
| | | | | |

3) Are you now or have you ever been contracted with any Transamerica company? ___Yes _✓_No  If yes, which agency?

4) Please provide a copy of your individual and/or corporate resident license (and/or a copy of your Letter of Certification, if your resident state requires such).

5) Do you plan to solicit Transamerica business in other states? ___Yes _✓_No  If so, are you currently licensed in those states? ___Yes ___No. If yes, please provide details including copy(ies) of license(s) for those states (please provide copy(ies) of non-resident license(s) and send non-resident fees.) If not, please be aware that no solicitation of business may occur until you are properly licensed and appointed as required in those states.

6) Do you plan to have any of your employees solicit Transamerica business on your behalf? ___Yes _✓_No. If so, please have every employee soliciting Transamerica business complete a Solicitor Application form.

TOA 556  Ed. 3/00    Page 2 of 10

**PART IV**                     Background Information
                            (Confidential Data)

The following questions must be answered by the applicant. If the applicant is a corporation or partnership, the questions apply to the firm and to each of its principals and officers. If you answer YES to any questions, please complete details and explanation on a separate sheet of paper and provide supporting documentation.

1) Have you ever been convicted of, pled guilty, or no contest to a felony or misdemeanor? ____Yes __✓__No
Note: You may omit misdemeanor convictions for possession of marijuana that occurred more than two years ago.

2) Is there any criminal indictment or criminal proceeding pending against you? ____Yes __✓__No

3) Have you, or any business of which you were or presently are a principal, been involved in a bankruptcy action within the last seven years? ____Yes __✓__No   (If YES, please attach detailed explanation and a copy of the discharge papers, if applicable.)

4) Have you been a plaintiff or defendant in any court proceeding within the last seven years? ____Yes __✓__No
Note: You may omit actions involving matters of family law.

5) Do you presently have, or have you ever had, any professional designations or memberships in industry organizations? __✓__Yes ____No (If YES, please provide a list of such designations or memberships and indicate dates of activity.) CFP

6) Have you ever had any license denied, suspended, or revoked, or been the subject of a disciplinary action which resulted in a fine, penalty or restricted license status? "License" shall include the following: a license issued by a state insurance department, a state securities agency, the NASD, the SEC, or any other regulatory agency (or any other professional license or designation). ____Yes __✓__No

7) Have you ever been discharged, or have you ever been requested to resign, from any employment? ____Yes __✓__No

8) Have you ever had any company appointments involuntarily terminated? ____Yes __✓__No

9) Are there any outstanding judgments, liens, or garnishments against you, or any business of which you were or presently are a principal? ____Yes __✓__No

10) Do you have unresolved matters pending with the Internal Revenue Service or other taxing authorities? ____Yes __✓__No

11) Does any insurer, general agent, agent, or broker claim you are indebted to it for unpaid premiums, mishandling collateral, losses sustained, or any other reason? ____Yes __✓__No

12) Has any E&O carrier denied, paid claims on, or canceled your coverage? ____Yes __✓__No

13) Are you currently covered under an E&O policy? __✓__Yes ____No If yes, give details on the next line.
(Please provide copy of policy face page or certificate.)
Name of Carrier: Continental Casualty Coverage Exp. Date: 1/13/04 Amount of Coverage: 1,000,000

14) Has a bonding or surety company denied, paid out on, or revoked a bond for you? ____Yes __✓__No

15) Have you ever had a bond declined or canceled? ____Yes __✓__No

16) Are you currently bonded? ____Yes __✓__No

FEB-10-2003 15:00 INNOVATIVE SOLUTIONS INS. 310 851 8211 P.06

## PART V — Notice and Release

Notice to Persons Applying for Sales Representative Positions
with Transamerica Occidental Life Insurance Company, Transamerica Assurance Company, and
Transamerica Life Insurance and Annuity Company

Federal law requires you be advised that in connection with your application to represent Transamerica Occidental Life Insurance Company, Transamerica Assurance Company, and Transamerica Life Insurance and Annuity Company (referred to as "Transamerica") for the purpose of selling its products, a consumer report and/or investigative consumer report may be prepared whereby information is obtained through credit reporting agencies and/or personal interviews with your neighbors, friends, or others with whom you are acquainted. Such reports are usually part of the process of evaluating suitability for a sales representative position. Inquiry may be made into your character, general reputation, personal characteristics and mode of living and credit information. It is possible that a representative of a firm employed to make such reports may call upon you in person.

You have a right to request disclosure of the nature and scope of the investigation upon written request to our Home Office made within a reasonable time after the receipt of this notice. A summary of your rights under the Fair Credit Reporting Act is attached hereto.

### Authority for Release of Information

To Whom It May Concern:

I hereby authorize Transamerica or its legal representative to obtain any information from former or current employers, criminal justice agencies, consumer reporting agencies, or individuals, relating to my activities. This information may include, but is not limited to achievement, performance, attendance, personal history, credit and conviction records. I hereby direct you to release such information upon request to Transamerica or its legal representative. I understand that Transamerica or its legal representative may be required by law to release information obtained to government agencies.

I hereby release all persons and entities, including record custodians, from any and all liability for damages of whatever kind or nature which may at any time result to me on account of compliance, or any attempts to comply, with this authorization. A photocopy of this release shall be as valid as the original.

## PART VI — Applicant Signature Section

I have thoroughly reviewed this application and have answered all questions to the best of my knowledge. By signing below, I hereby agree to all matters set forth above and below, including, without limitation, a multi-company assignment of commissions set forth in Part VIII and the acknowledgment authorizations and releases set forth in Part V.

I hereby agree that if and when any or all of the companies issue to me any Contract(s) for which I hereby apply, I will be bound by such Contract(s) (Independent Producer Contract on form number CNT-550 for TOLIC, CWN-550 for TAC, TFN-550 for TALIAC, or Agent Contract on form number CNT-500 for TOLIC, CWN-500 for TAC, TFN-500 for TALIAC; or an Non-Individual Agent Contract form number CNT-525 for TOLIC, CWN-525 for TAC, and TFN-525 for TALIAC). I understand that my supervising office has specimen forms of the Contract(s) on file and I have had the opportunity to review such Contract(s). My submitting to the company any application for an insurance policy or annuity contract shall constitute my agreement to such Contract(s), and all of the terms, conditions, and provisions set forth therein. I acknowledge that by signing this Contract Application and by submitting any such insurance application for an insurance policy or annuity contract, I have so agreed to the Contract(s) and no further signature by me shall be necessary.

I have been provided with pages five (5) through ten (10) of this application, for my records.

Applicant Signature                                        11, 20, 02
                                                           Date

## PART VII — General Agent Signature Section

GA Signature                                               11, 20, 02
                                                           Date

TOA 556 Ed. 3/00                      Page 4 of 10



# GLOVSKY & GLOVSKY

### ATTORNEYS AT LAW



**Kevin M. Dalton**
kdalton@glovskyx2.com
Direct Dial 978-720-3109

February 6, 2004

**BY COURIER**

Civil Clerk's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA  02210

> **Re:    EJD Insurance Agency, Inc. v. Transamerica Occidental Life
> Insurance Company and BISYS Insurance Services, Inc.**

Dear Sir/Madam:

In connection with the above matter, enclosed for filing please find the following:

*        Answer of Defendant, Transamerica Occidental Life Insurance Company, to
Plaintiff, EJD Insurance Agency, Inc.'s Complaint.

Thank you for your attention and helpfulness.  If you have any questions, please feel free
to contact me.

Very truly yours,

GLOVSKY & GLOVSKY

Kevin M. Dalton

KMD:jsh
Enclosure
cc:  David Krumsiek, Esq.

Eight Washington Street  Beverly, MA 01915  Tel: 978.922.5000  Fax: 978.921.7809